ALLISON A. DAVIS (State Bar No. 139203)
MARY H. HAAS (State Bar No. 149770)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone:   (213) 633-6800
Facsimile:   (213) 633-6899
Email:        allisondavis@dwt.com
              maryhaas@dwt.com

ARTHUR F. COON (State Bar No. 124206)
ANTHONY M. LEONES (State Bar No. 184499)
MILLER STARR REGALIA
1331 N. California Blvd., Fifth Floor
Walnut Creek, California 94596
Telephone:   (925) 935-9400
Facsimile:   (925) 933-4126
Email:        arthur.coon@msrlegal.com
              tony.leones@msrlegal.com

Attorneys for Defendant
OUTFRONT MEDIA LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ANTON KARRAA, RABADI SERVICE STATION, INC. CALPRO, an Unincorporated Association of Residents, Property Owners and Taxpayers of the City of Los Angeles, J. KEITH STEPHENS, and VIRTUAL MEDIA GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a municipal; corporation, OUTFRONT MEDIA, INC., and DOE 1 through DOE 25, <br><br> Defendants. | Case No. 2:20-cv-07036-SVW-AGRx <br><br> **OUTFRONT MEDIA LLC'S NOTICE OF MOTION AND MOTION TO DISMISS** <br><br> Date:        September 21, 2020 <br> Time:        1:30 pm <br> Judge:       Hon. Stephen V. Wilson <br> Courtroom:   10A <br><br> [*Request for Judicial Notice and [Proposed] Order filed concurrently*] <br><br> Action Filed: April 27, 2020 |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on September 21, 2020 at 1:30 p.m., in Courtroom 10A in the First Street Courthouse, 350 W. 1ˢᵗ Street, Los Angeles, California 90012, or as soon thereafter as the matter may be heard, Defendant Outfront Media LLC ("Outfront Media") will and does move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing all claims against Outfront Media contained in Plaintiffs' Complaint ("Complaint") on the following basis:

(1) First and Second Claims for Relief for deprivation of rights under the First and Fifth Amendment of the US Constitution, respectively, fail on the grounds that Outfront Media is not a state actor nor is it acting under the color of one. Additionally, plaintiffs have failed to allege causation of damages arising from the alleged wrongful act of Outfront Media.

(2) Fourth and Fifth Claims for Relief for violations of the Sherman Antitrust Act and the Cartwright Act, fail to state a claim on the grounds that Plaintiffs have failed to allege sufficient facts to support any conspiracy or agreement, a fundamental component of an antitrust claim.  Additionally, such claim is barred by immunity under the *Noerr-Pennington* doctrine and the *Parker* state doctrine.

(3) Sixth Claim for Relief for violation of California Unfair Competition Law fails on the grounds that plaintiffs lack standing and have failed to allege (and cannot) that they have suffered any economic harm arising from Outfront Media's conduct.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 6, 2020.

1        This Motion is based upon this Notice of Motion; the accompanying

2   Memorandum of Points and Authorities; Request for Judicial Notice; oral argument

3   of counsel; and such other and further matters as the Court may consider.

4

5   Dated:  August 13, 2020          DAVIS WRIGHT TREMAINE LLP

6

7                       By:  /s/ Allison Davis

                          Allison A. Davis

8                             Mary H. Haas

9                       Attorneys for Defendant

                    OUTFRONT MEDIA LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     STANDARD OF REVIEW .....................................................................2

III.    FACTUAL ALLEGATIONS ...................................................................3

IV.     ARGUMENT ..........................................................................................5

      A.   PLAINTIFFS' ANTITRUST CLAIMS FAIL TO STATE A CLAIM FOR RELIEF. ...............................................................5

           1.   Plaintiffs Fail to State a Claim Under the Sherman Act ..............................5

           2.   Plaintiffs Have Not and Cannot Allege the Existence of Any Conspiracy under the Sherman Act. ...............................7

                a.   Plaintiffs have not alleged any price fixing or territory allocation claim under Section One of the Sherman Act. ................9

                b.   Plaintiffs fail to state a claim under Section Two of the Sherman Act. .........................10

           3.   Plaintiffs Fail To State a Claim Under the Cartwright Act. ........................11

           4.   Any Antitrust Claim for Relief Is Barred by Immunity under *Noerr-Pennington* or the *Parker* State Action Doctrines. ..........................11

      B.   PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL ON MULTIPLE GROUNDS .............................................13

           1.   Plaintiffs Fail to Allege the Requisite State Action for Their § 1983 Claims. .....................13

           2.   Plaintiffs Have Not and Cannot Allege Outfront Media *Caused* Any Constitutional Deprivation. ....................17

           3.   Plaintiffs Cannot Allege a Violation of the First Amendment or Article I of the California Constitution. .....................18

      C.   PLAINTIFFS FAIL TO ALLEGE A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION STATUTE ....................20

           1.   CALPRO Cannot State a Claim in a Representative Capacity ...................20

           2.   Plaintiffs Lack Standing to Assert a UCL Claim. ......................20

           3.   Plaintiffs' Claimed Injury Flows Not from Outfront's Conduct but from the City. .....................22

           4.   Plaintiffs' UCL Claim Fails As It Is Tied to the Other Defective Claims. .................23

DAVIS WRIGHT TREMAINE LLP

5.     Given That It Makes No Attempt To Plead At All—Let Alone with Particularity—Any Factual Allegations of Fraud, the Complaint Fails to State Any Claim Premised on Fraudulent Business Practices. ..................................................................................24

V.     CONCLUSION ..............................................................................................25

DAVIS WRIGHT TREMAINE LLP

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017) ........................................................14, 15, 17

*Am. Tobacco Co. v. United States*,
  328 U.S. 781 (1946) .......................................................................................................6

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ..............................................................................................2, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... *passim*

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ...............................................................................21, 23

*Blank v. Kirwan*,
  39 Cal. 3d 311 (1985) ............................................................................................11, 12

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994), *overruled on other grds. in Galbraith v. Cty. of
  Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ...........................................................3

*Cal. Outfront Equity Partners, LLC v. City of L.A.*,
  145 F. Supp. 3d 921 (C.D. Cal. 2015) ......................................................................19

*Cal. Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*,
  445 U.S. 97, 100 S. Ct 937, 63 L.Ed. 2d 233 (1980) ...........................................12

*Cal. Transp. v. Trucking Unlimited*,
  404 U.S. 508, 92 S. Ct 609, 30 L.Ed 2d 642 (1972) .............................................11

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984)......................................................................................2

*Caviness v. Horizon Comm. Learning Ctr., Inc.*,
  590 F.3d 806 (9th Cir. 2010).........................................................................13, 14, 17

*Chepel v. State of Cal. Dep't of Ins.*,
  2011 WL 5025931 (E.D. Cal. Oct. 21, 2011) ..........................................................16

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*,
  452 F. Supp. 2d 924 (N.D. Cal. 2006) ......................................................................20

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1134 (E.D. Cal. 2017)...............................................................14, 17

DAVIS WRIGHT TREMAINE LLP

*Contest Promotions, LLC v. City & Cty. of S.F.*,
    100 F. Supp. 3d 835 (N.D. Cal. 2015) ....................................................19

*Cty. Of Tuolumne v. Sonora Cmty. Hosp.*,
    236 F.3d 1148 (9th Cir. 2001).................................................................7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010).................................................................3

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)...............................................................24

*Deitrich v. John Ascuaga's Nugget*,
    548 F.3d 892 (9th Cir. 2008)..........................................................15, 16

*Eastern R. Conf. v. Noerr Motors*,
    365 U.S. 127, 81 S.Ct. 523, 5 L.Ed 2d 464 (1961) ...............................11

*Florer v. Congregation Pidyon Shevuyim, N.A.*,
    639 F.3d 916 (9th Cir. 2011)..........................................................13, 14

*Fonda v. Gray*,
    707 F.2d 435 (9th Cir. 1983)..........................................................14, 15

*Franklin v. Fox*,
    312 F.3d 423 (9th Cir. 2002)....................................................14, 15, 17

*Hawkins v. Kroger Co.*,
    906 F.3d 763 (9th Cir. 2018)...............................................................21

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013)..............................................................23

*Hoover v. Ronwin*,
    466 U.S. 558, 104 S. Ct. 1989, 80 L.Ed.2d 590 (1984) ........................12

*Hopkinsville Cable TV v. Pennyroyal Cablevision*,
    562 F. Supp. 543 (W.D. Ky. 1982) ......................................................12

*In re Air Cargo Shipping Antitrust Litig.*,
    Case No. 06-md-1755 (E.D.N.Y.)..........................................................9

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112, 117 (3d Cir. 1999)......................................................6, 7

*In re Chocolate Confectionary Antitrust Litig.*,
    801 F.3d 383 (3d Cir. 2015) .................................................................6

*In re Citric Acid Antitrust Litig.*,
    Nos. 95-1092, C-95-2693 MFS, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996)............................9

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999)................................................................7

*In re Elevator Antitrust Litig.*,
   502 F. 3d 47 (2d Cir. 2007).................................................................9

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ..............................................9

*In re Hawaiian & Guamanian Cabotage Antitrust Litigation*,
   647 F. Supp. 2d 1250,1256-57 (W.D. Wash. 2009)...............................9

*In re Less-Than-Truckload Shipping Serv. Antitrust Litig.*,
   2009 U.S. Dist. LEXIS 14276, 2009 WL 323219 (N.D. Ga. Jan. 28, 2009) ...........................9

*In re Lithium Ion Batteries Antitrust Litig. ("Batteries")*,
   No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2004)....................................10

*In re Optical Disk Drive Antitrust Litig.*,
   2017 WL 6503743 (N.D. Cal. Dec. 18, 2017) .....................................7

*In re Transpacific Passenger Air Transportation Antitrust Litigation*,
   No. C 07-05634 CRB, 2011 U.S. Dist. LEXIS 49853 (N.D. Cal., May 9, 2011).....................6

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012).......................................20, 24

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   __ Cal. 5th ___, 2020 Cal. LEXIS 4876 (Aug. 3, 2020)........................11

*Kamal v. City of L.A.*,
   2018 WL 4328467 (C.D. Cal. Sept. 6, 2018) .....................................14

*Lamar Cent. Outfront, LLC v. City of L.A.*,
   245 Cal. App. 4th 610 (2016)................................................................19

*Lubic v. Fid. Nat. Fin., Inc.*,
   No. C08-0401 MJP, 2009 U.S. Dist. LEXIS 62092 (W.D. Wash. July 20, 2009) ...................6

*Marin County Bd. of Realtors, Inc. v. Palsson*,
   16 Cal. 3d 920 (1976)........................................................................11

*Marshall v. Meadows*,
   2011 WL 976620 (E.D. Cal. Mar. 16, 2011) .....................................16

*McVicar v. Goodman Glob., Inc.*,
   1 F. Supp. 3d 1044 (C.D. Cal. 2014)..............................20, 21, 22

*Metro Lights v. City of L.A.*,
   551 F.3d 898 (9th Cir. 2009)................................................................18

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

DAVIS WRIGHT TREMAINE LLP

*Mine Workers v. Pennington*,
  381 U.S. 657, 85 S. Ct. 1585, 14 L.Ed. 2d 626 (1965) ............................................11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) ............................................6

*Morse v. N. Coast Opportunities, Inc.*,
  118 F.3d 1338 (9th Cir. 1997) ............................................13

*Paladin Assocs. v. Montana Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) ............................................10

*Paramount Contractors & Developers, Inc. v. City of L.A.*,
  516 F. App'x 614 (9th Cir. 2013) ............................................19

*Paramount Contractors & Devs., Inc. v. City of L.A.*,
  805 F. Supp. 2d 977 (C.D. Cal. Aug. 2, 2011) ............................................19

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ............................................24

*Parker v. Brown*,
  317 U.S. 341, 63 S. Ct. 307, 87 L.Ed. 315 (1943) ............................................1, 11, 12

*Roberts v. AT&T Mobility LLC*,
  877 F.3d 833 (9th Cir. 2017) ............................................16

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ............................................22

*Sanders v. Brown*,
  504 F. 3d 903 (9th Cir. 2007) ............................................11, 12

*Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*,
  17 F.3d 295 (9th Cir. 1994) ............................................12

*Show Media Cal., LLC v. City of L.A.*,
  479 F. App'x 48 (9th Cir. 2012) ............................................19

*Stanislaus Food Prods. Co., v. USS-POSCO Indus.*,
  803 F.3d 1084 (9th Cir. 2015) ............................................10

*Student Loan Mktg. Ass'n v. Hanes*,
  181 F.R.D. 629 (S.D. Cal. 1998) ............................................2

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999) ............................................13

*Tabi v. Safeway, Inc.*,
  2012 WL 6761723 (C.D. Cal. Oct. 4, 2012) ............................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

DAVIS WRIGHT TREMAINE LLP

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F. 3d 430 (6th Cir. 2008) .................................................................6

*Townsend v. Columbia Operations*,
   667 F.2d 844 (9th Cir. 1982) .................................................................3

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) .................................................................3

*Vanguard Outfront, LLC v. City of L.A.*,
   648 F.3d 717 (9th Cir. 2011) ...........................................................18, 19

*Woodrum v. Woodward Cty., Okl.*,
   866 F.2d 1121 (9th Cir. 1989) ..............................................................15

*World Wide Rush, LLC v. City of L.A.*,
   606 F.3d 676 (9th Cir. 2010) ................................................................18

**Statutes**

15 U.S.C. § 1 ..........................................................................6, 7, 9, 10

15 U.S.C. § 2 .................................................................................10

42 U.S.C. § 1983 ..................................................................... *passim*

California Cartwright Act, Cal. Bus. & Prof. Code §16720 ...................1, 5, 11

California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq. ...................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................. *passim*

Federal Rule of Civil Procedure 9(b) ................................................23, 24

**Constitutional Provisions**

First Amendment to the U.S. Constitution ........................................... *passim*

Fifth Amendment to the U.S. Constitution ........................................13, 15

Artilcle I of the California Constitution ..............................................18

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

## I.    INTRODUCTION

At its core, this case is yet another challenge to billboard ordinances enacted by the City of Los Angeles nearly twenty years ago that have been the subject of many unsuccessful legal attacks.  The City of Los Angeles is the obvious primary target.  But Plaintiffs did not stop there and have asserted a multitude of claims based on conjecture and speculation against Defendant Outfront Media LLC ("Outfront Media"), a national billboard company operating in Los Angeles, and competitor of Plaintiff Virtual Media Group.  As evidenced by their inability to articulate even one viable claim against it, Outfront Media is but an unwilling participant in Plaintiffs' "test" case.  There is no legal basis to maintain Outfront Media as a party to this case.

First, as to the antitrust claims for relief under the Sherman Act and the California Cartwright Act, Plaintiffs have failed to state a claim upon which relief can be granted because Plaintiffs' allegations are insufficient to support any conspiracy or agreement, much less any antitrust claims.  It is fundamental principal of pleading that a plaintiff may not merely allege the existence of a conspiracy, but must assert facts sufficient to establish *each defendant's* participation and specific role in the alleged conspiracy.  Plaintiffs make no attempt to meet this burden. Additionally, because these claims are all based upon provisions of the Los Angeles Municipal Code and actions by the City of Los Angeles, whatever conduct Outfront Media is alleged to have engaged in is protected under the *Noerr-Pennington* doctrine and the *Parker* state action doctrine.

Second, the Constitutional violations claims fail because Outfront Media is not a state actor nor acting under the color of one.  Further, Plaintiffs have failed to establish how Outfront Media's alleged conduct *caused* Plaintiffs' constitutional harm.  Again, the focus of these claims is on the conduct of the City, not a private actor like Outfront Media.  Moreover, there is well established Ninth Circuit precedent that forecloses their First Amendment claims.

Third, Plaintiffs' claim of unfair competition fails because Plaintiffs lack standing and have failed to allege (and cannot allege) that they suffered any economic harm arising from Outfront Media's conduct.  Additionally, this claim fails because it is inextricably tied to the other defective claims.

For all these reasons, Outfront Media requests that the Complaint be dismissed without leave to amend.

## II.   STANDARD OF REVIEW

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility for entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 557).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 687 (citing *Twombly*, 550 U.S. at 555).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

DAVIS WRIGHT TREMAINE LLP

some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

To the extent that Plaintiffs refer to the contracts with Outfront Media or other documents, these documents can be considered in this motion to dismiss.  "We hold that documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.  Such consideration does 'not convert the motion to dismiss into a motion for summary judgment.'"  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) *overruled on other grds. in Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); in accord, *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) (quoting *Branch v. Tunnell*).  A document is not "outside" a complaint if the complaint specifically refers to the documents, and if its authenticity is not in dispute.  *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982).

## III.   FACTUAL ALLEGATIONS

Plaintiff California Property Rights Organization of Los Angeles ("CALPRO") is an "association" of property owners, residents, and taxpayers in Defendant, City of Los Angeles, California (the "City").  Compl. ¶ 1.  Among CALPRO's members is Plaintiff Anton Karraa ("Mr. Karraa"), president of Plaintiff Rabadi Service Station, Inc. ("Rabadi Service Station").  Compl. ¶¶ 2, 3.  Rabadi Service Station in turn owns a gas station in the City.  Compl. ¶ 3.  At that gas station, Defendant Outfront Media LLC ("Outfront Media") operated a billboard (the "First Billboard") pursuant to a ground lease (the "First Billboard Lease") and presently operates a second billboard (the "Second Billboard") under a separate ground lease.  Compl. ¶¶ 4, 32, 40.  Plaintiffs J. Keith Stephens ("Mr. Stephens") and Virtual Media Group, Inc. ("VMG") develop and operate billboards in competition with Outfront Media.  Compl. ¶¶ 5, 6.

DAVIS WRIGHT TREMAINE LLP

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

When the First Billboard Lease term neared its end, Mr. Karraa attempted to negotiate a new lease with and demand increased rent from Outfront Media. Compl. ¶ 32. Ultimately, however, Mr. Karraa and VMG entered into a lease to operate a billboard at Rabadi Service Station's gas station. Compl. ¶ 33. Per Plaintiffs, Outfront Media then allegedly threatened to remove the First Billboard and to prevent any billboard from operating at the gas station. Compl. ¶ 34. These alleged threats were "fruitless." Compl. ¶ 35.

According to the Complaint, the City often issues permits to Outfront advertising companies to remove billboards without the consent of owners of land where billboards sit. Compl. ¶¶ 25, 27. This City "policy" purportedly deters and prevents land owners from demanding fair market ground lease rents from Outfront advertising companies, causing ground lease rents to remain "artificially and unfairly low" and causing lost rent revenue. Compl. ¶¶ 28, 29, 30, 104.

As the First Billboard Lease term concluded, Mr. Karraa objected and refused to consent to the City's issuance of a permit to remove the First Billboard. Compl. ¶ 36. The City, however, issued such a permit to Outfront Media. Compl. ¶ 37. Pursuant to that permit and Outfront Media's right under the terms of the First Billboard Lease, Outfront Media removed the above-ground portions of the First Billboard. Compl. ¶ 37.[1] Mr. Stephens and VMG then submitted an application to the City for a permit to replace those portions of the First Billboard. Compl. ¶ 49. The City declined that application in supposed violation of its Municipal Code. Compl. ¶¶ 50, 51.

That Municipal Code incorporates ordinances that regulate billboards (the "City Ordinances"). Compl. ¶ 12. "Because of" those City Ordinances, "monolithic" Outfront advertising companies can relocate a billboard from one site to another site, prevent installation of a new billboard at the former site, and thereby

_____

[1] *See* Outfront Media's Request for Judicial Notice of the Lease accompanying this Motion.

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

influence sites, ground lease rents, and advertising rates for billboards. Compl. ¶ 21. City Ordinances likewise prevent rebuilding of billboards removed upon demands for fair market rent of owners of land where billboards stand. Compl. ¶ 22. In short, according to Plaintiffs, the City has "made [b]illboards a scarce commodity and unfairly suppressed ground lease rents for private parties." Compl. ¶ 104.

## IV.   ARGUMENT

### A.   PLAINTIFFS' ANTITRUST CLAIMS FAIL TO STATE A CLAIM FOR RELIEF.

The allegations supporting Plaintiffs' antitrust actions against Outfront Media are plainly insufficient and both the Fourth Claim for Relief under the Sherman Act and the Fifth Claim for Relief under the Cartwright Act should be dismissed for failure to state a claim upon which relief can be granted.

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Defendant prevails on a motion to dismiss if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Here, Plaintiffs cannot state a claim under either the Sherman Act or the Cartwright Act because there is no evidence of any agreement or conspiracy, and even if Plaintiffs could allege such facts, the claims would be barred by immunity under the *Noerr-Pennington* or state action doctrine because the claims are all based upon the Los Angeles Municipal Code and actions by the City of Los Angeles.

### 1.   Plaintiffs Fail to State a Claim Under the Sherman Act.

Plaintiffs allege three conspiracies under the Sherman Act. The first is a conspiracy under Section One to "fix prices for advertising and for ground leases." Compl. ¶ 157. The second conspiracy, also under Section One, was to "divide the

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

DAVIS WRIGHT TREMAINE LLP

Los Angeles Outfront advertising market among themselves." *Id*.  The third is a conspiracy under Section Two to "keep out competitors" and to monopolize the Outfront advertising market in Los Angeles.  Compl. ¶ 156-57.

Section One of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce …." 15 U.S.C. § 1.  "The existence of an agreement is the hallmark of a Section 1 claim."  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 117 (3d Cir. 1999); *see also In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 395 (3d Cir. 2015) ("Without proof of concerted action, the plaintiff's claim fails because the 'very essence of a [S]ection 1 claim . . . is the existence of an agreement.'").  To show concerted action, antitrust plaintiffs must produce evidence showing that the alleged conspirators "had a conscious commitment to a common scheme designed to achieve an unlawful objective."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citation omitted).  In other words, proof of a "unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement" is required.  *Id.* (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)).  "[A] Section 1 claim 'requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.'"  *In re Transpacific Passenger Air Transportation Antitrust Litigation*, No. C 07-05634 CRB, 2011 U.S. Dist. LEXIS 49853, at *39 (N.D. Cal., May 9, 2011) (citing *Twombly*, 550 U.S. at 556).

Not only must Plaintiffs show concerted action with a commitment towards a common scheme, but also they must allege facts establishing ***each defendant's*** participation and specific role in the alleged conspiracy to satisfy *Twombly*.  *See, e.g. Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 436 (6th Cir. 2008) ("Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*."); *Lubic v. Fid. Nat. Fin., Inc.*, No. C08-0401

MJP, 2009 U.S. Dist. LEXIS 62092, at *14-15 (W.D. Wash. July 20, 2009) ("A complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.") (citations omitted). Plaintiffs' allegations relating to Outfront Media fail completely in this regard.

### 2.   Plaintiffs Have Not and Cannot Allege the Existence of Any Conspiracy under the Sherman Act.

First, Plaintiffs offer no direct evidence of any agreement or conspiracy. There are no documents or details or even the identity of any persons regarding meetings between Outfront Media and anyone, no evidence of any agreement, and no evidence any such meeting or agreement was hidden. "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Cty. Of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1155 (9th Cir. 2001) (citation omitted); *see also In re Baby Food Antitrust Litig.*, 166 F.3d at 118 ("[W]ith direct evidence 'the fact finder is not required to make inferences to establish facts.'") (citation omitted).

Thus, Plaintiffs must present sufficient circumstantial evidence "from which an inference of conspiracy is more probable than an inference of independent action." *In re Optical Disk Drive Antitrust Litig.*, 2017 WL 6503743 at *2 (N.D. Cal. Dec. 18, 2017). The Ninth Circuit has "outlined a two-part test to be applied whenever a plaintiff rests its case entirely on circumstantial evidence." *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999). "First, the defendant can 'rebut an allegation of conspiracy by showing a plausible and justifiable reason for its conduct that is consistent with proper business practice.'" *Id.* (citations omitted). Then, the burden "shifts back to the plaintiff to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *Id.* To meet this burden, plaintiff must "introduce evidence that would permit a jury to conclude that a conspiracy… [is] more likely than not." *In re Citric Acid Litig.*, 191 F.3d at 1094 n.2. Plaintiffs' allegations here fall short of this standard. Outfront Media's

DAVIS WRIGHT TREMAINE LLP

"behavior" was conducting business under the Los Angeles Municipal Code and its leases, and any allegations that Outfront Media violated any antitrust laws are pure speculation.

Plaintiffs allege that the "Sign Ban" – a municipal ordinance that regulates, among others, Outfront Media (LAMC Sec. 14.4.4) – was an "agreement entered between a few of nation's largest Outfront advertising companies…"  Compl. ¶ 18. Plaintiffs repeat a similar general allegation that Outfront Media and other unnamed competitors "entered into a conspiracy to accomplish the anticompetitive goals described in this complaint" and then label it the "Anticompetitive Plan" with no further detail as required by *Twombly*.  Compl. ¶ 22.  Plaintiffs further allege, without explaining what or when such agreements were made and between whom, that the linchpin in this "Anticompetitive Plan" is the Los Angeles Municipal Code. Compl. ¶ 22.

Plaintiffs then allege that the unnamed (save for Outfront Media) "Predatory Companies" – presumably all of which, like Outfront Media, are regulated by the City – are in league with the City of Los Angeles because the City has departed from its "normal practices" and "ignores the law."  Compl. ¶ 27 and ¶¶ 25-30. Again, there is no allegation about the formation of any conspiracy or agreement, other than speculative accusation.

The allegations listing Outfront Media's interactions with Mr. Karraa also provide no evidence of any conspiracy.  Rather, Outfront Media took proper actions authorized by law (the Municipal Code) and under its leases.  Compl. ¶¶ 31-38. Plaintiffs provide no facts that allege any meetings, telephone calls or other interactions with so-called joint conspirators to carry out the alleged price fixing or territory allocation.  Outfront Media's actions were singular and consistent with the terms of its lease and the legitimate business conduct of a billboard company.  There is zero evidence offered of any agreement with anyone to "fix prices" or to allocate territories.

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

The numerous allegations involving the City of Los Angeles and its actions have nothing to do with Outfront Media.  Plaintiffs provide no factual allegations of any time or place that Outfront met with or had agreements with the City of Los Angeles.  *See generally* Compl. ¶¶ 42-108.  In spite of Plaintiffs' insistence that the Municipal Code and the actions of the City of Los Angeles were in furtherance of the "Anticompetitive Plan" – there are no allegations of any agreement or evidence that such a plan exists except in the minds of the Plaintiffs.

As the Court in *In re Hawaiian & Guamanian Cabotage Antitrust Litigation* recognized, "a distinguishing factor" in the viability of the antitrust complaint analyzed under *Twombly* "has been the inclusion of ***specific allegations*** concerning time, place, and person versus general allusions to 'secret meetings,' 'communications,' or 'agreements.'"  647 F. Supp. 2d 1250, 1256-57 (W.D. Wash. 2009) (emphasis added) (citing *In re Less-Than-Truckload Shipping Serv. Antitrust Litig.*, 2009 U.S. Dist. LEXIS 14276, 2009 WL 323219, at *10-11 (N.D. Ga. Jan. 28, 2009) ("contrasting *In re Graphics Processing Units Antitrust Litig.,* 540 F. Supp. 2d 1085 (N.D. Cal. 2007), in which specific dates and specific actions were pleaded, with *In re Air Cargo Shipping Antitrust Litig.,* Case No. 06-md-1755, E.D.N.Y., and *In re Elevator Antitrust Litig.,* 502 F. 3d 47, 50-51 (2d Cir. 2007) involving, respectively, vague allegations of 'secret meetings' and conclusory accusations of 'conspiratorial activity' constituting 'nothing more than a list of theoretical possibilities, which one could postulate without knowing any facts whatsoever'")).  Plaintiffs offer no details about meetings or agreement or any actions taken in furtherance of any conspiracy save for conclusory assertions.

### a. Plaintiffs have not alleged any price fixing or territory allocation claim under Section One of the Sherman Act.

To succeed on a claim of price-fixing in violation of Section 1, plaintiffs must prove: (1) that there was a conspiracy to fix prices in violation of the antitrust laws; (2) that prices were fixed pursuant to the conspiracy; and (3) that plaintiffs purchased products at prices that, as a result of the conspiracy, were higher than they

DAVIS WRIGHT TREMAINE LLP

should have been.  *See In re Citric Acid Antitrust Litig.*, Nos. 95-1092, C-95-2693 MFS, 1996 WL 655791, at *6 (N.D. Cal. Oct. 2, 1996).

To state a claim against a defendant for involvement in a conspiracy, plaintiffs must "allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and conscious decision by each defendant to join it."  *In re Lithium Ion Batteries Antitrust Litig. ("Batteries")*, No. 13-MD-2420 YGR, 2014 WL 309192, at *13 (N.D. Cal. Jan. 21, 2004) (internal marks and citation omitted); *see also Twombly*, 550 U.S. at 556 ("[W]e hold that stating such a [Section 1] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.").

Plaintiffs' conclusory allegations set forth in their Complaint concerning Outfront Media's participation in any conspiracy are clearly inadequate.  Plaintiffs have failed to show the existence of any conspiracy, much less that any such conspirators made an agreement to set prices.  Additionally, Plaintiffs complain of artificially ***low*** prices for ground leases (Compl. ¶¶ 156, 158), not higher prices. Finally, it does not appear that any of these Plaintiffs made any of the alleged purchases that were "fixed."

Similarly, Plaintiffs' territorial allocation fails to show any agreement existed to divide territory between or among competitors and parallel behavior is not enough.  *See, e.g.*, *Stanislaus Food Prods. Co., v. USS-POSCO Indus.*, 803 F.3d 1084, 1092 (9th Cir. 2015).  They have failed to provide sufficient "specific evidence" to support any finding of such a conspiracy.

**b.    Plaintiffs fail to state a claim under Section Two of the Sherman Act.**

To state a claim for conspiracy to monopolize in violation of Sherman Act Section Two, Plaintiffs must allege four elements: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury."

DAVIS WRIGHT TREMAINE LLP

10

*Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).  As discussed above, Plaintiffs have failed to show the requisite elements of a conspiracy, or any combination between Outfront Media and anyone.  There is no overt act alleged to further the conspiracy or any intent to monopolize.  Outfront Media has adhered to the Municipal Code and its own contracts, and there are no allegations to the contrary.  Plaintiffs complain about the law but not that Outfront Media has violated any particular law or contract.  Plaintiffs have not and cannot state a claim under Section Two.

### 3.    Plaintiffs Fail To State a Claim Under the Cartwright Act.

The Cartwright Act is construed similarly to the Sherman Act, and because of that, Plaintiffs' claim under the Cartwright Act also fails.  *Blank v. Kirwan*, 39 Cal. 3d 311, 320 (1985) ("the Cartwright Act is patterned after the Sherman Act…") (citing *Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976)); *see also Ixchel Pharma, LLC v. Biogen, Inc.*, __ Cal. 5th ___ (Aug. 3, 2020) 2020 Cal. LEXIS 4876 at *23 (California applies the rule of reason to restraints of trade analyzed under the Cartwright Act).

Plaintiffs' allegations fail to state a claim under the Cartwright Act for the same reasons they fail under the Sherman Act as discussed above, and should be dismissed.

### 4.    Any Antitrust Claim for Relief Is Barred by Immunity under *Noerr-Pennington* or the *Parker* State Action Doctrines.

Even if Plaintiffs could state a claim under the Sherman Act or Cartwright Act, Outfront Media is exempt from prosecution under the *Noerr-Pennington* immunity doctrine, the state action doctrine or both.  *Blank*, 39 Cal. 3d at 320.

When a restraint upon trade or monopolization is the result of valid governmental action, those urging it enjoy absolute immunity from antitrust liability for the anticompetitive restraint.  *Sanders v. Brown,* 504 F. 3d 903, 914 (9th Cir. 2007) (protects private petitions of the government from state-law antitrust liability in exactly the same way it protects them from federal antitrust liability); *Eastern R.*

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

DAVIS WRIGHT TREMAINE LLP

*Conf. v. Noerr Motors*, 365 U.S. 127, 135-144, 81 S.Ct. 523, 5 L.Ed 2d 464 (1961) (legislative and executive branches); *Mine Workers v. Pennington*, 381 U.S. 657, 669-672, 85 S. Ct. 1585, 14 L.Ed. 2d 626 (1965) (executive branch); *Cal. Transp. v. Trucking Unlimited*, 404 U.S. 508, 509-511, 92 S. Ct 609, 30 L.Ed 2d 642, 645-646 (1972) (judicial branch and administrative agencies).

*Noerr-Pennington* immunity protects a private party from liability not only for the petition, but also for any injuries that result from valid government action taken on the petitioner's behalf.  *Sanders*, 504 F. 3d at 914 (citing *Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*, 17 F.3d 295, 299 (9th Cir. 1994)).  Because Plaintiffs claim their alleged injuries are caused by the Los Angeles Municipal Code, *Noerr-Pennington* immunity shields Outfront Media from any liability for any anticompetitive effects stemming from the actions of the City of Los Angeles.  *Blank*, 39 Cal. 3d at 322.  "Construing the allegations of [plaintiffs'] complaint liberally, it asserts nothing more than that [defendants] sought to obtain a monopoly from City.  This is precisely the type of conduct that *Noerr-Pennington* protects."  *Id.* (*citing Hopkinsville Cable TV v. Pennyroyal Cablevision*, Inc., 562 F. Supp. 543, 546 (W.D. Ky. 1982)).  This is also true if the government action is the legal cause of Plaintiffs' injury.  *Blank*, 39 Cal. 3d at 322.

Additionally any so called conspiracy between the City of Los Angeles and Outfront Media is protected by "*Parker*" or state action immunity.  *Sanders v. Brown*, 504 F.3d at 915 (citing *Parker v. Brown*, 317 U.S. 341, 350-52, 63 S. Ct. 307, 87 L.Ed. 315 (1943)).  To qualify for Parker immunity the anticompetitive policy must be (1) "clearly articulated and affirmatively expressed as state policy," and (2) actively supervised by the state itself."  *Id.* (*quoting Cal. Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S. Ct 937, 63 L.Ed. 2d 233 (1980) [internal citations omitted]).  Other states hold that state action immunity applies if the acting sovereign created the restraint of trade.  *Sanders*, 504

F. 3d at 916 (*citing Hoover v. Ronwin*, 466 U.S. 558, 568-69, 104 S. Ct. 1989, 80 L.Ed.2d 590 (1984) [internal citations omitted]).

Here, Plaintiffs' antitrust claims all arise from the City of Los Angeles Municipal Code, and the action of the City, or actions taken by Outfront Media in compliance with the Municipal Code. These action are all protected under either the *Noerr-Pennington* or the *Parker* state action doctrines.

## B.   PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL ON MULTIPLE GROUNDS.

Plaintiffs' § 1983 claim premised on violations of the First Amendment and Fifth Amendment fail on multiple levels. First, Plaintiffs fail to allege, as they must, specific facts showing that Outfront Media engaged in "state action" when it allegedly violated Plaintiffs' constitutional rights. Second, Plaintiffs state no facts establishing how Outfront Media's conduct *caused* its alleged constitutional deprivations. Third, the Ninth Circuit has already foreclosed Plaintiffs' alleged First Amendment violations in multiple binding decisions, and those claims fail as a matter of law. Each of these independent grounds warrants dismissal of Plaintiffs' § 1983 claims.

### 1.   Plaintiffs Fail to Allege the Requisite State Action for Their § 1983 Claims.

Private entities, like Outfront Media, "are not normally liable for violations of most rights secured by the United States Constitution." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1340 (9th Cir. 1997); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) ("§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong."). To bring a claim under 42 U.S.C. § 1983 against a private entity, a plaintiff must therefore establish (1) the alleged deprivation was "the result of a governmental policy," i.e., under color of state law; and (2) "the party charged with deprivation can be fairly considered a state actor." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922-24 (9th Cir. 2011). This requires "such a close nexus between the State

DAVIS WRIGHT TREMAINE LLP

and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). Courts must "start with the presumption that conduct by private actors is not state action." *Florer*, 639 F.3d at 922. Plaintiffs here allege nothing to overcome that presumption (nor can they).

Indeed, courts generally recognize four tests for establishing "state action," only one of which Plaintiffs appear to invoke: the "joint action" or "conspiracy" test. *See* Compl. ¶¶ 123 ("Defendants have acted and conspired to act under color of statute, ordinance, regulation, and policy of the City"), ¶ 136 (same).[2] "This test focuses on whether the state has 'so far insinuated itself into a position of interdependence with the private actor that it must be recognized as a joint participant in the challenged activity.'" *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). A plaintiff must establish that the defendant conspired with "the public entity [with] the [shared] goal of violating a plaintiff's constitutional rights." *Id.*; *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) ("[A]n agreement or meeting of the minds to violate constitutional rights must be shown.").

This requires the plaintiff allege with particularity facts establishing "that defendants acted by a unified, concerted action to violate plaintiffs' [constitutional] rights." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1184 (E.D. Cal. 2017) (dismissing complaint, as allegations "in no way suggest acts by the defendants 'unlikely to have been undertaken without an agreement'"); *Kamal v. City of L.A.*, 2018 WL 4328467, at *19 (C.D. Cal. Sept. 6,

---

[2] In any event, none of the other tests are applicable. For example, the "public function" test applies only where the private actor "is endowed by the State with powers or functions . . . [that are] traditionally and exclusively governmental." *Florer*, 639 F.3d at 924. The state compulsion test requires that the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Caviness*, 590 F.3d at 816 ("[e]ven extensive government regulation . . . is insufficient").

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

2018) ("A plaintiff must plead with particularity which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of the plaintiff's constitutional rights."). Courts are "careful to require a substantial degree of cooperation" before finding joint action. *Franklin*, 312 F.3d at 445. Thus, the state's "mere acquiescence" to private conduct, "without more, [is] insufficient to prove conspiracy." *Fonda*, 707 F.2d at 438. Nor will "bare" or "conclusory" allegations of conspiracy survive a motion to dismiss. *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (affirming Rule 12(b)(6) dismissal based on "conclusory allegations" of conspiracy); *Deitrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (affirming Rule 12(b)(6) dismissal, as "Plaintiff's bare allegation that the defendants acted in concert . . . is insufficient to establish joint action").

Yet Plaintiffs base their § 1983 claim on nothing more than conclusory allegations of conspiracy. In particular, Plaintiffs allege that (1) the City violated its First Amendment rights by issuing the Sign Ban, which allegedly allows the City to favor certain speakers and distinguish between speech in on-site and off-site billboards, Compl. ¶¶ 13-16, 67-71, 88-91; (2) the City violated its Fifth Amendment rights by issuing the Sign Ban, which allegedly decreases the value of property leases and under which the City allows billboards to be removed without just compensation, *id*. ¶¶ 17, 27, 29, 63; and (3) Outfront Media violated plaintiffs' Fifth Amendment rights by removing the above-ground portion of Outfront Media's billboard structure, pursuant to a private lease, RJN Ex. A § 8,[3] and for which the City granted a permit, *id*. ¶¶ 27, 29, 37.

As discussed at length in Parts IV(A)(2)-(3), *supra*, for each of these alleged violations, Plaintiffs allege no facts tying Outfront Media to any agreement or "conspiracy" with the City or its Sign Ban—no meetings, no communications, no

---

[3] Exhibit A is attached to Outfront Media's Request for Judicial Notice submitted with this Motion.

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

names, no dates, nothing—let alone facts demonstrating "substantial cooperation" between them or a "meeting of the minds" to violate Plaintiffs' constitutional rights. Plaintiffs' allegations fail to meet its burden.  *See, e.g.*, *Comm. to Protect*, 235 F. Supp. 3d at 1184 (dismissing § 1983 claim premised on alleged conspiracy to increase oil production, as allegations that private defendants "contributed to defendant Governor Brown, held meetings with the trade association defendants, and communicated with state actors . . . are completely innocuous and in no way suggest acts by the defendants 'unlikely to have been undertaken without an agreement'").  This deficiency is especially fatal, as nearly all of the facts Plaintiffs alleged concern only the City's conduct—namely, its Sign Ban and its enforcement. *See Chepel v. State of Cal. Dep't of Ins.*, 2011 WL 5025931, at *6 (E.D. Cal. Oct. 21, 2011) (granting Rule 12(b)(6) motion where factual allegations focused on "the [government's] conduct, not conduct by" the private insurers, which cannot "support treating those private entities as state actors").  Plaintiffs' unsupported allegation that the Sign Ban is a result of some unspecified "agreement" between Outfront Media, the City, and other unnamed entities (Compl. ¶ 18) does not save its claims. *Deitrich*, 548 F.3d at 900 ("bare allegations" insufficient).  Nor can its bare assertions that "Defendants have acted and conspired to act under color of statute," Compl. ¶¶ 123, 136, compensate for its utter absence of factual allegations.

Notably, courts have repeatedly recognized that acting with a permit or license—as Plaintiffs allege Outfront Media did here—does not convert private conduct into state action.  *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 845 (9th Cir. 2017) ("Conduct by private entities with mere approval or acquiescence of the State is not state action."); *Marshall v. Meadows*, 2011 WL 976620, at *4 (E.D. Cal. Mar. 16, 2011) (rejecting "proposition that [defendants'] status as medical license holders transforms all of their conduct into state action").  Without more, Plaintiffs fail to allege sufficient facts to establish any conspiracy, let alone one that could convert Outfront Media's mere ownership of billboards,  single act of removing its

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

DAVIS WRIGHT TREMAINE LLP

billboard structure, and compliance with the City's Municipal Code into state action.

Plaintiffs' First and Second Claims for Relief are both ripe for dismissal on this ground alone.

### 2. Plaintiffs Have Not and Cannot Allege Outfront Media *Caused* Any Constitutional Deprivation.

In addition to demonstrating state action, Plaintiffs must also allege facts demonstrating that the conduct at issue "deprived [them] of constitutional rights," and "there is an actual connection or link between the actions of defendants and the deprivation allegedly suffered by plaintiff." *Comm.*, 235 F. Supp. 3d at 1181; *see Tabi v. Safeway, Inc.*, 2012 WL 6761723, at *4 (C.D. Cal. Oct. 4, 2012), *report and rec. adopted*, 2012 WL 6761570 (C.D. Cal. Dec. 28, 2012) ("An individual defendant is not liable on a civil rights claim unless the facts establish that defendant's personal involvement in some constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation."). Further, where, as here, "a state actor commits the challenged conduct, the plaintiff must establish that the private [party] was the proximate cause of the violations." *Franklin*, 312 F.3d at 445. "Absent some showing that a private party had some control over state officials' decision to commit the challenged act, the private party did not proximately cause the injuries stemming from the act." *Id.* at 446. Plaintiffs have not alleged such facts here.

In particular, Plaintiffs' § 1983 claims rest almost exclusively on the *City's* alleged conduct in enacting and enforcing the Sign Ban. *E.g.*, Compl. ¶¶ 13-16, 27, 29, 51, 67-68, 88-91, 104. Plaintiffs allege *no* facts from which a court could infer that Outfront Media had any "control" over the City's legal promulgations or permitting decisions. The only conduct Plaintiffs actually attribute to Outfront Media is the removal of its billboard from one plaintiff's property, which was allowed under those parties' private lease. RJN Ex. A § 8. As discussed above, this single event is not "state action," and cannot carry Plaintiffs' sweeping § 1983 claims against Outfront Media beyond the motion to dismiss stage. As Plaintiffs

DAVIS WRIGHT TREMAINE LLP

17

allege no facts linking the conduct of Outfront Media to the alleged constitutional violations, Plaintiffs have failed to satisfy the causation element of its § 1983 claim. These claims against Outfront Media should therefore be dismissed.

### 3. Plaintiffs Cannot Allege a Violation of the First Amendment or Article I of the California Constitution.

Plaintiffs' § 1983 claim premised on violations of the First Amendment and Article I, §§ 2 & 7, of the California Constitution fails for the independent reason that binding Ninth Circuit precedent forecloses Plaintiffs' claims.

Plaintiffs, in particular, claim the following violate the First Amendment and Article I of the California Constitution: (1) the Sign Ban's distinction between off-site and on-site signs, Compl. ¶¶ 88-91; (2) its allowance for exceptions that allegedly permit the City to favor certain speakers, *id.* ¶¶ 13-14, 16, 67, 68-71; and (3) its alleged redirection of billboards to City-owned property, *id.* ¶¶ 104.

The Ninth Circuit—on three separate occasions—addressed the very First Amendment challenges to the Los Angeles Sign Ordinance Plaintiffs bring here. *Vanguard Outfront, LLC v. City of L.A.*, 648 F.3d 717 (9th Cir. 2011); *World Wide Rush, LLC v. City of L.A.*, 606 F.3d 676 (9th Cir. 2010); *Metro Lights v. City of L.A.*, 551 F.3d 898 (9th Cir. 2009). In each instance, the Ninth Circuit upheld the Sign Ban as constitutional under the First Amendment, both as applied and facially. First, in *Metro Lights*, the Ninth Circuit noted "it is well-established that traffic safety and aesthetics"—the City's stated interests supporting the Sign Ordinance—"constitute substantial government interests." 551 F.3d at 904. It then upheld as constitutional the Sign Ordinance's (i) distinctions between onsite and offsite signs, and (ii) exceptions for thousands of offsite signs, including signs on City property. *Id.* at 906-14. In *World Wide Rush*, the Ninth Circuit held (i) exceptions to the Freeway Facing Sign Ban (which Plaintiffs mention in their Complaint, ¶¶ 73-77) are constitutional; and (ii) exceptions to the Sign Ban do not render it an unconstitutional prior restraint on speech. 606 F.3d at 684-89. In *Vanguard*, the Ninth Circuit, on review of a preliminary injunction motion, (i) reiterated that the

DAVIS WRIGHT TREMAINE LLP

Sign Ban's allowance for exceptions had been upheld as constitutional; and (ii) held plaintiff could not demonstrate the onsite/offsite distinction was unconstitutional, as it "has been repeatedly upheld as content-neutral and valid." *Id.* at 740-46.  The Ninth Circuit also held the Sign Ban did not violate the California Constitution's free speech provisions.  *Id.* at 747-48; *see also Show Media Cal., LLC v. City of L.A.*, 479 F. App'x 48 (9th Cir. 2012) (rejecting plaintiff's first amendment challenge to L.A. Sign Ban's "rebuild" provision, and affirming Rule 12(b)(6) dismissal with prejudice).

As the Ninth Circuit recognized, these decisions "should have resolved litigation in most, if not all, of the billboard cases."  *Vanguard*, 648 F.3d at 738 ("[T]he Ninth Circuit has twice in the last two years rebuffed First Amendment challenges to the City's attempts to control sign proliferation throughout the City of Los Angeles.").  Indeed, in the wake of this anthology of controlling precedent, district courts have held these types of constitutional challenges to the LA Sign Ban, and other cities' similar laws, fail on the pleadings.  *E.g.*, *Cal. Outfront Equity Partners, LLC v. City of L.A.*, 145 F. Supp. 3d 921, 925-930 (C.D. Cal. 2015) (granting Rule 12(b)(6) dismissal of § 1983 claims challenging the LA Sign Ban's "distinction between offsite and onsite content" and "allowance of many exceptions"); *Paramount Contractors & Devs., Inc. v. City of L.A.*, 805 F. Supp. 2d 977, 989-1002 (C.D. Cal. Aug. 2, 2011) (granting 12(b)(6) dismissal of same challenges to "similar" ordinances, including claim that exceptions "resulted in viewpoint discrimination against speakers who could not afford to participate" in the scheme); *Contest Promotions, LLC v. City & Cty. of S.F.*, 100 F. Supp. 3d 835, 842-46 & n.7 (N.D. Cal. 2015) (granting Rule 12(b)(6) dismissal on claims challenging "substantially similar" ordinances); *see also Paramount Contractors & Developers, Inc. v. City of L.A.*, 516 F. App'x 614, 616 n.1  (9th Cir. 2013) ("To the extent that Paramount challenges L.A. Mun. Code §§ 14.4.4(B)(9)–(11), this court has upheld the constitutionality of these provisions against similar challenges."); *see also*

DAVIS WRIGHT TREMAINE LLP

*Lamar Cent. Outfront, LLC v. City of L.A.*, 245 Cal. App. 4th 610, 626-633 (2016) (relying on Ninth Circuit and other authorities that "have uniformly" concluded the L.A. off-site ban does not violate First Amendment, to conclude it does not violate California's free speech clause).

This Court should follow suit and dismiss Plaintiffs' § 1983 free speech claims.

## C. PLAINTIFFS FAIL TO ALLEGE A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION STATUTE

### 1. CALPRO Cannot State a Claim in a Representative Capacity

California's Unfair Competition Law (the "UCL") "no longer permit[s] associational or representative standing." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 900 (C.D. Cal. 2012). Rather, representative actions—that is, "actions seeking relief on behalf of others"—"must be brought as class actions." *Id.*

This is not a class action. Yet in the Complaint's Sixth Claim for Relief alleging UCL violations (the "UCL Claim for Relief"), CALPRO—an "association"—aims to assert UCL claims "in a representative capacity on behalf of the City and its residents, property owners[,] and taxpayers." Compl. ¶ 1. Given that the UCL bars associational and representative standing outside class actions, this Court should dismiss the UCL Claim for Relief as to CALPRO, without leave to amend. *See WellPoint*, 903 F. Supp. 2d at 931 (dismissing "with prejudice" associations' "representative UCL claims"); *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 452 F. Supp. 2d 924, 939 (N.D. Cal. 2006) (dismissing a UCL claim without leave to amend "because the UCL no longer permits associational standing").

### 2. Plaintiffs Lack Standing to Assert a UCL Claim.

The UCL limits standing to bring a claim for relief to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1050 (C.D.

20

DAVIS WRIGHT TREMAINE LLP

Cal. 2014).  Surviving a motion to dismiss for lack of this statutory standing "requires a twofold showing."  *WellPoint*, 903 F. Supp. 2d at 925 (internal quotation marks omitted).  To demonstrate standing, "plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).  In particular, a complaint's factual allegations "must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim."  *McVicar*, 1 F. Supp. 3d at 1050 (internal quotation marks omitted).

Here, Plaintiffs' pleading fails to adequately allege either economic injury or causation.  As to the threshold requirement of economic injury, the lone economic injury identified in support of the UCL Claim for Relief is alleged "wrongfully obtained ground lease rental income"—that is, alleged "monies that Defendants avoided paying in ground lease rent" for land on which billboards reside.  Compl. ¶ 175; 52:16–19.  Logic dictates that only underpaid lessors of land hosting billboards would experience this form of economic injury.  Yet nothing in the Complaint suggests that CALPRO, in its individual capacity, Mr. Karraa, Mr. Stephens, or VMG are lessors of any land on which billboards stand.  Compl. ¶ 1 (alleging CALPRO as an association comprising property owners, residents, and taxpayers); ¶¶ 3, 4, 40 (alleging not that Mr. Karraa owns the site of the First and Second Billboards, but that he is president of the actual, corporate owner of that site); ¶ 5 (alleging Mr. Stephens's work in developing and operating billboards); ¶¶ 6, 33, 35 (alleging that VMG is a lessee—not a lessor—of land for billboards).  The only lessor named in the Complaint is Rabadi Service Station.  Compl. ¶¶ 3, 4, 40.  At best, the Complaint's allegations give rise to a possible (although not plausible) inference of economic injury to Rabadi Service Station.  The Court should therefore dismiss the UCL Claim for Relief as to all other Plaintiffs, for

DAVIS WRIGHT TREMAINE LLP

failure to properly plead economic injury—and thus statutory standing—and attendant failure to state a claim.  *See Hawkins v. Kroger Co.,* 906 F.3d 763, 768 n.5 (9th Cir. 2018) ("a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim").

### 3.   Plaintiffs' Claimed Injury Flows Not from Outfront's Conduct but from the City.

To allege standing under the UCL, a plaintiff "must not only show economic injury, but must also show that the injury was the result of, i.e., caused by, the unfair business practice."  *McVicar,* 1 F. Supp. 3d at 1052 (internal quotation marks omitted).  That is, the UCL "also requires a causal connection between [the] alleged UCL violation and [the plaintiff's] injury."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).

In this case, the Complaint falls short of showing that requisite causal connection.  The sole economic injury pleaded to prop up the UCL Claim for Relief is purported lost ground lease rent.  Yet missing from the Complaint are factual allegations tethering lost ground lease rent to conduct of Outfront Media.  The Complaint instead declares that the ***City*** has "made [b]illboards a scarce commodity and unfairly suppressed ground lease rents for private parties."  Compl. ¶ 104.  According to the Complaint, the ***City*** and its "policy" of issuing permits to remove billboards without lessor consent deter and prevent lessors from demanding fair market ground lease rents from Outfront advertising companies.  Compl. ¶¶ 28, 29, 30, 104.  The Complaint likewise contends that ***City*** Ordinances prevent rebuilding billboards removed following demands for fair market ground lease rents from Outfront advertising companies.  Compl. ¶ 22.  In the words of the Complaint, it is "[b]ecause of" those City Ordinances that unidentified Outfront advertising companies can relocate a billboard from one site to another, prevent installation of a new billboard, and thereby allegedly influence ground lease rents.  Compl. ¶ 21.  In short, to the extent that the Complaint alleges any causal connection triggering UCL standing, that causal link is not one between Outfront Media's conduct and any

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1 alleged injury, but is instead one between the City's conduct and Plaintiff's

2 purported economic injury.

3      Nor do allegations of threats provide an antidote to the Complaint's maladies.

4 Although the Complaint claims that Outfront Media "threatened" to remove the

5 First Billboard and prevent another billboard from operating at Rabadi Service

6 Station's site, those alleged threats were—as the Complaint puts it—"fruitless"

7 (Compl. ¶ 35) and were in any event consistent with its contractual lease rights.

8 Allegations of conduct that the Complaint itself describes as ineffectual cannot

9 plausibly suggest causation—and by extension cannot plausibly establish standing

10 or any entitlement to relief under the UCL.  Dismissal of the UCL Claim for Relief

11 in its entirety is thus warranted.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104

12 (9th Cir. 2013) (observing that the UCL "requires a plaintiff to demonstrate some

13 form of economic injury *as a result of his transactions with the defendant*"

14 (emphasis added; internal quotation marks omitted)).

15     **4.    Plaintiffs' UCL Claim Fails As It Is Tied to the Other Defective Claims.**

16

17      Even assuming that the Complaint clears the dual hurdles of economic injury

18 and causation to support standing, the UCL Claim for Relief remains ripe for

19 dismissal, as it rises and falls with Plaintiffs' defective antitrust and constitutional

20 claims.  The UCL "borrows violations from other laws by making them

21 independently actionable as unfair competitive practices."  *Hinojos*, 718 F.3d at

22 1103 n.2.  Because Plaintiffs' UCL claim relies on their antitrust and constitutional

23 claims and is predicated on those same allegations, it too fails.  *See Birdsong*, 590

24 F.3d at 960 n.3 ("[P]laintiffs cannot state a UCL claim under the 'unlawful' prong

25 because such a claim is predicated solely on . . . violations of the law, which they

26 failed to allege.").

27

28

**5.**    **Given That It Makes No Attempt To Plead At All—Let Alone with Particularity—Any Factual Allegations of Fraud, the Complaint Fails to State Any Claim Premised on Fraudulent Business Practices.**

Federal Rule of Civil Procedure 9(b) mandates that a party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Accordingly, a complaint alleging "UCL causes of action . . . grounded in fraud . . . must satisfy the traditional plausibility [pleading] standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).  To in turn "properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Id.* (internal quotation marks omitted).

The pleading here does none of that.  Nothing in the Complaint details the "who, what, when, where, and how" of any false or misleading statement.  Instead, the Complaint offers a bare allegation of "wrongful conduct" constituting "fraudulent . . . business acts and practices"—and nothing more.  Compl. ¶ 173.  Without factual allegations corroborating that conclusory allegation, the Complaint comes nowhere close to meeting the basic plausibility pleading standard of Rule 12(b)(6)—much less the heightened pleading standard of Rule 9(b).  The primary action that can be ascertained of Outfront Media's conduct from the allegations of the Complaint is that Outfront Media is complying with the City's ordinance.  The Court should dismiss the UCL Claim for Relief accordingly.  *See WellPoint*, 903 F. Supp. 2d at 926 (dismissing with prejudice UCL claims where the complaint "fails to plead the 'who, what, when, where, and how of the alleged fraudulent conduct' with sufficient particularity").

DAVIS WRIGHT TREMAINE LLP

### V.   CONCLUSION

None of Plaintiffs' claims are viable because Outfront Media complied with the Municipal Code and its lease, and there are no facts alleged that support any claims in the Complaint.  Because Plaintiffs have failed to allege any viable claim, Outfront Media moves to dismiss with prejudice, as any amendment would not save their claims and thus be futile.  *Parents for Privacy v. Barr*, 949 F.3d 1210, 1226 (9th Cir. 2020).

Dated:  August 13, 2020                    DAVIS WRIGHT TREMAINE LLP


                                           By:  /s/ Allison A. Davis
                                               Allison A. Davis
                                               Mary H. Haas

                                           Attorneys for Defendant
                                           OUTFRONT MEDIA LLC

DAVIS WRIGHT TREMAINE LLP

OUTFRONT MEDIA LLC'S MOTION TO DISMISS
Case No. 2:20-cv-07036-SVW-AGRx

1

**CERTIFICATE OF SERVICE**

2

3      I hereby certify that on the date given below, I electronically filed the

4  foregoing pleading with the Clerk of the Court using the CM/ECF system which

5  will send electronic notification of such filing to the following persons:

6

7      Raymond N. Haynes, Jr.
       9060 Grove Street
8      Elk Grove, CA 95624
       Tel:  (916) 709-9781
       Email: ray-haynes@hotmail.com
9      **Attorneys for Plaintiffs**
       CALPRO, ANTON KARRAA,
10     RABADI SERVICE STATION, INC., J.
       KEITH STEPHENS, AND
11     VIRTUAL MEDIA GROUP, INC.

12

13     Michael N. Feuer
       Terry P. Kaufmann Macias
       Kenneth T. Fong
14     200 North Main Street
       City Hall East Room 701
15     Los Angeles, California 90012
       Tel:  (213) 978-8202
16     Fax: (213) 978-8214
       Email: kenneth.fong@lacity.org
17     **Attorneys for Defendant**
       CITY OF LOS ANGELES

18

19

20     Dated this 13th day of August, 2020

                                            */s/ Allison A. Davis*
21                                          Allison A. Davis

22

23

24

25

26

27

28