UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| T. Jackson | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER GRANTING DEFENDANT OUTFRONT MEDIA, INC.'S MOTION TO DISMISS [9], GRANTING DEFENDANT CITY OF LOS ANGELES'S MOTION FOR JUDGMENT ON THE PLEADINGS [12], AND DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [22]

## I.   Introduction

On April 27, 2020, Plaintiffs Anton Karraa, Rabadi Service Station, Inc. ("Rabadi"), CALPRO, J. Keith Stephens, and Virtual Media Group, Inc. ("VMG") filed a complaint in Los Angeles Superior Court against the City of Los Angeles ("the City") and Outfront Media, Inc. ("Outfront"). The complaint asserted First Amendment claims, Fifth Amendment takings and inverse condemnation claims, antitrust claims under the Sherman and Cartwright Acts, claims under California's Unfair Competition Law, and a request for a writ of mandate. Dkt. 1-1 ("Compl."). For the reasons articulated below, the Court GRANTS Outfront's motion to dismiss, GRANTS the City's motion for judgment on the pleadings, and DENIES Plaintiffs' motion for preliminary injunction.

## II.   Factual and Procedural Background

### a.   Los Angeles Sign Ordinances

In 2002, the City of Los Angeles ("the City") adopted a series of ordinances ("Sign Ordinances") affecting "off-site signs," more commonly known as billboards. Compl. ¶ 12; *see* Los Angeles

Initials of Preparer   TJ

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

Municipal Code ("L.A.M.C.") § 91.6205.11 (defining off-site signs). The Sign Ordinance generally prohibits construction of new off-site signs unless an exception applies. L.A.M.C. § 14.4.4. Exceptions include signs "specifically permitted pursuant to a legally adopted specific plan, supplemental use district or an approved development agreement." *Id.*; *see* Compl. ¶¶ 12, 15. The Ordinances also expressly exempt existing signs. *Id.* ¶ 48.

Plaintiffs allege that these exceptions have been manipulated by the City to allow "favored speakers" to circumvent the Sign Ordinances. *Id.* ¶¶ 13-14, 67-69. As examples, Plaintiffs refer to large signs permitted on buildings around downtown Los Angeles. *Id.* ¶¶ 76, 92.

### b. Alleged Anticompetitive Plan

Plaintiffs allege that the Sign Ordinances were adopted as part of "an agreement entered between a few of the nation's largest outdoor advertising companies, including, but not limited to Defendant Outfront, to unfairly stifle competition and maintain their monopolistic control over the Los Angeles Billboard market, which is the second largest in the United States." *Id.* ¶ 18. This "agreement" was allegedly a reaction to new, smaller competitors in the market, including Plaintiff VMG, which "began driving up prices for ground leases." *Id.* ¶ 19. The Sign Ordinances artificially suppress the prices for ground leases by preventing the construction of new billboards and permitting large advertising companies to prevent property owners from raising rents by threatening to remove existing billboards if property owners seek to negotiate with competitors. *Id.* ¶ 21. The City's Building Department allegedly enables this practice by issuing permits to advertising companies to demolish billboards over the property owner's objections. *Id.* ¶ 27.

Plaintiffs' complaint describes the large advertising companies allegedly participating in this scheme as "dwarf[ing] their competition and exercis[ing] monopoly or near monopoly control over the Los Angeles adverting market." *Id.* ¶ 24. However, the only company named is Outfront. *Id.* ¶¶ 22-24. The only detail provided about Outfront's market share is that it "operates over 400,000 billboards in 25 of the top media markets in the United States." *Id.* ¶ 24.

Plaintiffs represent that "[s]ince the filing of the Complaint … Plaintiffs have done further investigation and learned that the meeting of the Predatory Companies where the Anticompetitive plan was agreed upon took place in a meeting room in the Bel Age Hotel in West Hollywood…." Opposition to Motion to Dismiss ("Oppo."), Dkt. 16, at 2 n.2. Plaintiffs also represent that they "have identified at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

least one witness who attended the meeting at the Bel Age and can testify to the details of the conspiracy." *Id.* None of these details, however, are alleged in the complaint. *See generally* Compl.

    **c. Karraa's Billboards**

Plaintiff Rabadi owns and operates a Mobil gas station on Santa Monica Boulevard in Hollywood. *Id.* ¶ 3. Plaintiff Anton Karraa is Rabadi's President. *Id.* ¶ 2.

A billboard ("First Karraa Billboard")was built at the gas station in 1997 by a non-party advertising company, which then leased the premises and operated the billboard. *Id.* ¶ 32. The lease was renewed and amended several times before it was acquired by Outfront. *Id.* The latest version of the lease was scheduled to expire on August 31, 2019. *Id.*

Karraa believed that the rent amount in the lease agreement was below fair market value and sought to negotiate an increase. *Id.* Plaintiffs allege that Outfront never responded to Karraa's requests to negotiate. *Id.* ¶¶ 32-33.

Karraa decided to look elsewhere, and contacted a smaller advertising company, Plaintiff VMG. *Id.* ¶ 6, 19, 33-34. Karraa and VMG entered into an agreement under which VMG would take over the billboard after expiration of the existing lease with Outfront. *Id.* ¶ 33.

When Outfront learned about the agreement with VMG, Outfront "threatened Karraa that if he leased to VMG, they would punish him by removing the large steel pole that had supported the First Karraa Billboard for more than two decades and seek to prevent any other [b]illboard from ever being operated" at the gas station. *Id.* ¶ 34.

To prevent removal of the pole, VMG offered to purchase it from Outfront for $180,000, which far exceeds the $5,000 to $7,500 value of the pole as scrap metal. *Id.* ¶¶ 35, 38. Accepting VMG's offer also would have saved Outfront $20,000 to $30,000 in costs to remove the pole. *Id.* Outfront did not respond to VMG's offer. *Id.*

Instead, Outfront applied to the City's Building Department for a permit to remove the pole. *Id.* ¶ 36. The L.A.M.C. requires the consent of the property owner to issue a building permit to a non-owner. *Id.* ¶ 25 n.4 (quoting L.A.M.C. § 91.103.2, which makes obtaining a permit without owner

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

consent a misdemeanor). Karraa filed an objection with the City Building Department, but the permit was issued anyways. *Id.* ¶¶ 36-37. Outfront removed the First Karraa Billboard in 2019. *Id.* ¶ 37.

A second billboard also sits at the Rabadi gas station ("Second Karraa Billboard"). *Id.* ¶ 40. Outfront also operates the Second Karraa Billboard. Declaration of J. Keith Stephens, Dkt. 23 ¶ 26. VMG entered into another lease to operate the Second Karraa Billboard after expiration of the lease to Outfront. *Id.* ¶ 27. The lease with Outfront for the Second Karraa billboard expires on December 31, 2020. *Id.* ¶ 26.

After Outfront removed the steel pole of the First Karraa Billboard, VMG applied to the City Building Department to replace the pole, arguing that they had an existing sign and repairing or rehabilitating it did not constitute new billboard construction. Compl. ¶¶ 48-50. The City rejected this application. *Id.* ¶¶ 50-51.

### III. Discussion

#### a. Legal Standards

##### i. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations.

| | : | |
|---|---|---|
| Initials of Preparer | | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

### ii. Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Knappenberger v. City of Phx.,* 566 F.3d 936, 939 (9th Cir.2009) (quoting *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.,* 50 F.3d 1486, 1488 (9th Cir.1995)). On a Rule 12(c) motion, the court must accept as true all the material facts alleged in the complaint and must draw all reasonable inferences in favor of the non-moving party. *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir.2009). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted).

### iii. Motion for Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit employs the "serious questions" test, which states "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

    **b. Application**

        **i. Antitrust Claims**

        **A. Sherman Act § 1 Claim**

    Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations…." 15 U.S.C. § 1. "The Sherman Act contains a 'basic distinction between concerted and independent action." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 (1984) (quoting *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 761 (1984)). "It is not enough that a single firm appears to 'restrain trade' unreasonably, for even a vigorous competitor may leave that impression." *Id.* "Because § 1 of the Sherman Act 'does not prohibit [all] unreasonable restraints of trade … but only restraints effected by a contract, combination or conspiracy,' … '[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from an independent decision or from an agreement, tacit or express.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (quoting *Copperweld*, 467 U.S. at 775 and *Theater Enters., Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 541 (1954)). "Section 1 of the Sherman Act does not reach conduct that is 'wholly unilateral.'" *Copperweld*, 467 U.S. at 768 (quoting *Albrecht v. Herald Co.*, 390 U.S. 145, 149 (1968)); *see also FTC v. Qualcomm, Inc.*, 969 F.3d 974, 989 (9th Cir. 2020) ("[T]o establish liability under § 1, a plaintiff must prove … the existence of an agreement.").

    To survive a motion to dismiss, therefore, an antitrust plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 553. "[A] bare assertion of conspiracy will not suffice." *Id.* at 556.

    The pleading standard for a § 1 violation is often invoked in cases in which antitrust plaintiffs plead only parallel conduct among competitors and argue that the parallel conduct is sufficient to raise an inference of conspiracy. *Twombly* held that alleging parallel conduct was insufficient to state a § 1 claim. Rather, "[a] statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Twombly*, 550 U.S. at 557. The Ninth Circuit requires the pleading of "plus factors" which

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

are "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *In re Musical Instruments and Equipment Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) (citing *Twombly*, 550 U.S. at 557 n.4).

Plaintiffs' complaint does not get far enough to even apply this standard – it only contains the bare assertion of an agreement. *See Twombly*, 550 U.S. at 557 (noting that an allegation of parallel conduct is insufficient because it is "much like a naked assertion of conspiracy in a § 1 complaint"). Plaintiffs' complaint describes the agreement in conclusory terms: "Plaintiffs are informed and believe and thereon allege that the few giant outdoor adverting companies which have monopolistic control over the Los Angeles outdoor advertising market … entered into a conspiracy to accomplish the anticompetitive goals described in this complaint." Compl. ¶ 22; *see also* ¶ 11. The complaint refers throughout to an "Anticompetitive Plan." *See*, *e.g.*, *id.* ¶¶ 22-24, 28-30, 39, 41, 51. However, the complaint only describes the conduct of Outfront. *Id.* ¶¶ 31-41. It neither states the identities of the other large advertising companies with which Outfront purportedly conspired nor even describes the conduct in which these other companies engaged. *Id.* ¶ 22 (characterizing parties to the "Anticompetitive Plan" as "including, but not limited to, Outfront and Doe 1 through Doe 25"). To the extent Plaintiffs are alleging that these other participants engage in the same conduct as Outfront, that allegation is conclusory because the only incident described involves Outfront.

Plaintiffs' complaint does allege unilateral conduct purportedly undertaken in furtherance of the conspiracy. For example, the participants in the "Anticompetitive Plan" are alleged to have spearheaded the Sign Ordinances, *id.* ¶ 22, destroyed existing billboards when property owners refused to continue to pay suppressed rents, *id.* ¶¶ 28-30, and obtained the favor of City officials through various contributions, *id.* ¶¶ 58-59. However, even if this conduct in coordination would amount to a per se § 1 violation or an unreasonable restraint of trade under the rule of reason, *see In re Musical Instruments and Equipment Antitrust Litig.*, 798 F.3d at 1191-92 (explaining separate bases for § 1 liability), Plaintiffs would still fail to state a § 1 claim. That is because an agreement is an element of a § 1 claim under either theory. *See id.* (per se violation shown "[o]nce the agreement's existence is established"); *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1150 (9th Cir. 2019) ("In order to state a Section 1 claim under the rule of reason, … [p]laintiffs must plead facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities.") (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012)).

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

Because Plaintiffs have failed to plead facts from which an agreement among the alleged participants to the Anticompetitive Plan could be inferred, their complaint fails to state a claim for a violation of § 1 of the Sherman Act.

### B. Sherman Act § 2

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations…." 15 U.S.C. § 2.

"To establish a conspiracy to monopolize claim under Section 2, plaintiffs must plead: '(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1159 (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003)). Plaintiffs' conspiracy claim under § 2 fails for the same reason as its § 1 claim – failure to plead facts from which a combination or conspiracy can be reasonably inferred.

Although the complaint is far from clear, *see* Compl. ¶¶ 155-163 (Sherman Act cause of action only explicitly refers to "conspiracy to monopolize"), Plaintiffs' opposition represents that they are also bringing a monopolization claim, Oppo. at 12. "To plausibly plead a monopolization claim, plaintiffs must allege: '(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1159 (quoting *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013)).

Monopoly power is "the power to 'control prices or exclude competition.'" *Cost Management Servs, Inc. v. Wash. Natural Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996) (quoting *Grinnel Corp.*, 384 U.S. 563, 571 (1966). Monopoly power may be shown through "direct evidence of the injurious exercise of market power" or through "circumstantial evidence" by "(1) defin[ing] the relevant market, (2) show[ing] that the defendant owns a dominant share of that market, and (3) show[ing] that there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

Plaintiffs' complaint contains several conclusory characterizations of "the few giant outdoor adverting companies which have monopolistic control over the Los Angeles outdoor advertising

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

market," Compl. ¶ 22; *see also id.* ¶ 17 (referring to "the few giant outdoor companies, including Outfront, which have monopoly or near monopoly control of the Los Angeles market…."). The only facts pled about Outfront's market power other than the isolated incident involving the Rabadi gas station is that Outfront "operates over 400,000 billboards in 25 of the top media markets in the United States." *Id.* ¶ 23.

Plaintiffs' conclusory characterizations of monopoly power can be disregarded in evaluating Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *In re NFL's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1149 (quoting *Counsins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)) ("[C]onclusory allegations of law … are insufficient to avoid a Rule 12(b)(6) dismissal.").

Plaintiffs' allegation that Outfront "operates over 400,000 billboards in 25 of the top media markets in the United States," *id.* ¶ 23, neither itself establishes nor allows a reasonable inference that Outfront or other participants in the Anticompetitive Plan "own[] a dominant share" of the relevant market. *Rebel Oil Co.*, 51 F.3d at 1434; *cf. Liveuniverse, Inc. v. Myspace, Inc.*, 2007 WL 6865852, at *7 (C.D. Cal. 2007) (plaintiff stated Sherman Act § 2 claim by alleging 89% of individuals who frequented social network websites used Myspace and that Myspace accounted for 82% of visits to social networking websites); *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1387 (5th Cir. 1994) ("[G]eneral descriptions of market success" are insufficient to show market power."). A complaint fails to state a § 2 claim where it lacks "any substantive allegations on the possession of monopoly power or the willful acquisition or maintenance of that power." *Sheehan v. State Farm Gen. Ins. Co.*, 394 F. Supp. 3d 997, 1011 (N.D. Cal. 2019) (citing *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 998 (9th Cir. 2010)). Plaintiffs' complaint thus fails to state a claim for violation of § 2 of the Sherman Act.[1]

---

[1] The Court does not address whether Plaintiff has adequately alleged a relevant market but notes that "[t]here are … some legal principles that govern the definition of an antitrust 'relevant market,' and a complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (quoting *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1044-45 (9th Cir. 2008)).

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

### ii. Constitutional Claims

#### A. First Amendment Claim

In its many prior cases addressing First Amendment challenges to the City's Sign Ordinances, the Ninth Circuit has relied on the four-part test for commercial speech set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980). The *Central Hudson* test provides: "(1) if 'the communication is neither misleading nor related to unlawful activity,' then it merits First Amendment scrutiny as a threshold matter; in order for the restriction to withstand such scrutiny, (2) '[t]he State must assert a substantial interest to be achieved by restrictions on commercial speech;' (3) 'the restriction must directly advance the state interest involved;' and (4) it must not be 'more extensive than is necessary to serve that interest.'" *Metro Lights, LLC v. City of Los Angeles*, 551 F.3d 898, 903 (9th Cir. 2009) (quoting *Central Hudson*, 447 U.S. at 564-66). "[T]he last two steps of the *Central Hudson* analysis basically involve a consideration of the 'fit' between the legislature's ends and the means chosen to accomplish those ends." *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 684-85 (9th Cir. 2010) (quoting *Rubin v. Coors Brewing Co.*, 5134 U.S. 476 486 (1995)).

The parties do not dispute that the Sign Ordinances merit First Amendment scrutiny because they do not restrict misleading speech or speech related to unlawful activity. The parties also do not dispute that the City has a substantial interest in reducing billboards to improve aesthetics and promote traffic safety. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 509-510 (1981); *Metro Lights*, 551 F.3d at 904 ("It is well-established that traffic safety and aesthetics constitute substantial government interests."). The only dispute concerns the third and fourth elements, whether the Sign Ordinances directly advance the City's interests in aesthetics and traffic safety and whether the Sign Ordinances are more extensive than is necessary to serve that interest.

Numerous cases have rejected underinclusiveness challenges to these and similar ordinances. The cases have asked whether, "'[e]valuated in the context of the entire regulatory scheme,'" the speech restriction is "'so pierced by exceptions and inconsistencies' as to be unconstitutionally underinclusive." *World Wide Rush*, 606 F.3d at 686 (quoting *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190-90 (1999)).

| | : |
|---|---|
| Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

In *Metromedia, Inc. v. City of San Diego*, the Supreme Court held that twelve exceptions to a prohibition on offsite advertising did not render the prohibition unconstitutionally underinclusive. 453 U.S. at 511-12. The Court reasoned that the restriction still advanced the City's interest by reducing the total number of billboards; that the City could reasonably believe that offsite advertising, "with its periodically changing content, present[ed] a more acute problem than does onsite advertising," and that the City was entitled to deference in its judgment that commercial interests outweigh the City's interests in aesthetics and traffic safety where the exceptions are applied. *Id.* The Ninth Circuit has relied on *Metromedia* to reject several underinclusiveness challenges to the City's Sign Ordinances. *See Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 745 (9th Cir. 2011) (challenge based on ten signs permitted notwithstanding supergraphic and offsite sign bans); *World Wide Rush*, 606 F.3d at 684-85 (challenge based on billboards near Staples Center and on Santa Monica Boulevard); *Metro Lights*, 551 F.3d at 900-01 (challenge based on exception for bus benches and other street furniture); *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810 (9th Cir. 2003) (challenge based on inspection fee requirements for existing off-site sign structures and offsite sign bans), *abrogation on other grounds recognized by Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009).

Plaintiffs' underinclusiveness challenge is foreclosed by this extensive body of case law. Plaintiffs point to several examples of off-site signs that the City permitted notwithstanding the Sign Ordinances, including a large digital billboard off the 10 freeway at a development called, "The Reef," Compl. ¶ 76, and a large banner on the Ritz Carlton hotel in downtown Los Angeles, *id.* ¶¶ 92-93.

The Sign Ordinances satisfy the third *Central Hudson* element. "[E]valuated in the context of the entire regulatory scheme," *World Wide Rush*, 606 F.3d at 685 (quoting *Greater New Orleans*, 527 U.S. at 192), the Sign Ordinances reduce the overall number of offsite signs in the City, and therefore the City's aesthetic and safety goals are directly advanced by the Ordinances notwithstanding the noted exceptions, *see Vanguard Outdoor*, 648 F.3d at 745; *World Wide Rush*, 606 F.3d at 686-87; *Metro Lights*, 551 F.3d at 907 ("[A] ban on some offsite signs still advances traffic safety and aesthetics more than a ban on none."). Further, the signs that Plaintiffs point out make far too small an impact on the overall reduction of offsite signs for the Court to conclude that "this handful of exceptions 'break[s] the link between the [offsite] Sign Ban and the City's objectives in traffic safety and aesthetics.'" *Vanguard Outdoor*, 648 F.3d at 745 (quoting *World Wide Rush*, 606 F.3d at 687)).

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

The Sign Ordinances likewise satisfy the fourth *Central Hudson* element, which "requires that the challenged regulation not be 'more extensive than is necessary to serve" its interest. *Metro Lights*, 551 F.3d at 906. "[T]his requirement does not demand that the government use the least restrictive means to further its ends." *Id.* Because "a complete prohibition would be sufficiently narrowly tailored, then a partial one must also be." *Id.* Plaintiffs make no argument why this case would present any reason to deviate from this logic. *See generally* Oppo.

Plaintiffs also allege that the Sign Ordinances violate the California Constitution. The Ninth Circuit and California courts have rejected the proposition that the California Constitution's free speech protection requires a different analysis for ordinances restricting offsite signage. Compl. ¶ 120; *see Vanguard Outdoor*, 648 F.3d at 748 ("Plaintiff's argument that enhanced protection exists for commercial speech under the California Constitution is unpersuasive and Plaintiff's California constitutional claim fails for the same reasons his First Amendment claims fail."); *Lamar Central Outdoor, LLC v. City of Los Angeles*, 245 Cal. App. 4th 610, 633 (2016) ("Consistent with the many authorities finding no constitutional infirmity under the First Amendment in the distinction between off-site and on-site signs, we reach a like conclusion under the free speech clause of the California Constitution.").

Plaintiffs' opposition leaves great ambiguity about whether it has abandoned several of the First Amendment theories suggested by its complaint. The opposition contains essentially no argument that Plaintiffs have stated a First Amendment claim and is instead limited to generic statements about the nature of precedent, First Amendment burdens, and the *Central Hudson* test. Oppo., at 10-13. However, to the extent the Court has discerned any additional First Amendment theories in Plaintiffs' complaint, all are likewise foreclosed by prior billboard precedent.[2]

---

[2] Discretionary exceptions created through the City's legislative power over land use do not make the Sign Ordinances unconstitutional prior restraints. Compl. ¶¶ 66, 75, 79; *see World Wide Rush*, 606 F.3d at 687-88. Plaintiffs' argument that an entire medium of communication has been destroyed without leaving ample alternative channels has also been rejected. Compl. ¶¶ 109-13; *see Paramount Contractors and Developers, Inc. v. City of Los Angeles*, 805 F. Supp. 2d 977, 1000 (C.D. Cal. 2011), *aff'd*, 516 F. App'x 614 (9th Cir. 2013) (citing *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1074 (9th Cir. 2006) (describing adequate alternatives to pole-based signs)). Plaintiffs' suggestion that the City's true intention is to help large billboard companies essentially sounds in pretext, an argument that has been rejected when based on the same exceptions as other First Amendment theories. Oppo., at 13; *see Vanguard Outdoor*, 648 F.3d at 746-48. Plaintiffs have not explained how their allegations that the City allows some advertisers to replace static billboards with digital billboards would

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

    The Court therefore grants the City's motion for judgment on the pleadings as to Plaintiffs' First Amendment claims.

### B. Fifth Amendment Claims

    Plaintiffs present two distinct Fifth Amendment theories. First, although Plaintiffs' pleading and briefing on this point are extremely difficult to follow, Plaintiffs appear to argue that the Fifth Amendment is violated by the City's alleged policy of requiring payment of large amounts of money to make use of an exception to the Sign Ordinances. *See* Compl. ¶¶ 127-39; Oppo., at 9. Although Plaintiffs make provocative assertions that "[t]he Predatory Companies regularly make large contributions to political campaigns in the City both in the form of cash, gifts and ad space for political campaigns." Compl. ¶ 59. Plaintiffs' complaint also contains allegations that outdoor advertising companies are required to "expend very significant amounts of money or bestow other valuable benefits on the City, including, in many cases a share in the revenue generated from Billboards." Even if this theory of takings liability were viable as a matter of law, Plaintiffs have failed to plead non-conclusory facts from which the existence of such a payment requirement could reasonably be inferred. Nor do Plaintiffs' bare allegations of a corrupt City plot to enrich outdoor advertising companies "plausibly suggest an entitlement to relief … given more likely explanations" for the City's sign policies. *Iqbal*, 556 U.S. at 681. This first Fifth Amendment theory therefore cannot survive the City's motion for judgment on the pleadings.[3]

---

fare any differently from the many other unsuccessful challenges to exceptions to the City's Sign Ordinances. Compl. ¶¶ 97-108; *Vanguard Outdoor*, 648 F.3d at 748. Moreover, Plaintiffs do not plead enough detail about the extent of digital billboard construction for the Court to determine that, "'[e]valuated in the context of the entire regulatory scheme,'" these additional exceptions make the Sign Ordinances "'so pierced by exceptions and inconsistencies' as to be unconstitutionally underinclusive." *World Wide Rush*, 606 F.3d at 686 (quoting *Greater New Orleans Broad. Ass'n*, 527 U.S. at 190-91).

[3] The City argues that this claim is not ripe because Plaintiffs failed to pursue a writ for administrative mandamus under Cal. Civ. Proc. Code § 1094.5. Motion for Judgment on the Pleadings, Dkt. 12, at 20-21. Under *Knick v. Township of Scott*, however, the Supreme Court held that there is no requirement to seek compensation through state procedures before bringing a claim under the Fifth Amendment. 139. S. Ct. 2162, 2170 (2019). *Knick* did not eliminate the requirement that a takings plaintiff obtain a final decision before bringing suit in federal court. *See Pakdel v. City and Cty. of San Francisco*, 952 F.3d 1157, 1163 (9th Cir. 2020).

Plaintiffs allege that they submitted an application for a permit to construct a replacement after Outfront removed the pole from the Rabadi gas station and that this application was denied. Compl. ¶ 50. The finality requirement depends on whether "the government entity charged with implementing the regulations has reached a final decision regarding the application of

|  | : |  |
|---|---|---|
| Initials of Preparer | | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

Plaintiffs' second theory is that the City violated Plaintiffs' Fifth Amendment rights by issuing a permit to Outfront which resulted in removal of the First Karraa Billboard from the Rabadi gas station without property owner consent in violation of the L.A.M.C. Compl. ¶¶ 25-41; 140-54.

A plaintiff bringing a takings claim "must make a showing of causation between the government action and the alleged deprivation." *Esplanade Props., LLC v. City of Seattle*, 307 F.3d 978, 984 (9th Cir. 2002) (citing *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 783 & n.33 (9th Cir. 2000), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)). Plaintiffs "must establish both causation-in-fact and proximate causation." *Tahoe Sierra*, 216 F.3d at 783; *see also St. Bernard Parish Gov't v. United States*, 887 F.3d 1354, 1362 (Fed. Cir. 2018) ("It is well established that a takings plaintiff bears the burden of proof to establish that the government action caused the injury.").

Plaintiffs' complaint contains numerous conclusory allegations that the City participated in the Anticompetitive Plan with large outdoor advertising companies. S*ee*, *e.g.*, Compl. ¶¶ 29, 64, 67, 72. As to granting demolition permits without owner consent, the complaint states in conclusory terms that the City Building Department has such a policy, but it points to no facts beyond the single anecdotal account at issue in this case to support such an inference. Compl. ¶¶ 25-41. The Court concludes that the allegations regarding Outfront's demolition of the First Karraa Billboard are too attenuated from conduct attributable to the City to satisfy the proximate cause requirement.

---

the regulations to the property at issue." *Id.* at 1163 (quoting *Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186)). The City has failed to point to additional intra-agency processes that would need to be taken before the Building Department's decision becomes final. Therefore, it appears to the Court at this stage that Plaintiffs' Fifth Amendment claim is ripe under *Knick*.

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

### C. Constitutional Claims against Outfront

Plaintiffs also assert their First Amendment and Fifth Amendment claims against Outfront. Compl. ¶¶ 114-40. Because Plaintiffs have failed to state a claim under the First or Fifth Amendments, the Court need not separately address these claims as to Outfront.[4]

### iii. Plaintiffs' Remaining State-Law Claims

"A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (quoting 28 U.S.C. § 1367(c)(3)). The Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over Plaintiffs' state law claims under the Cartwright Act, their claims under the Unfair Competition Law, and their request for a writ of mandate requiring the City to enforce provisions of the L.A.M.C.[5]

### iv. Motion for Preliminary Injunction

Plaintiffs' motion for preliminary injunction is also before the Court. Because Plaintiffs have failed to present even "serious questions going to the merits" of their claims, the Court does not need to analyze the other *Winter* factors and the motion for preliminary injunction is denied. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

---

[4] The Court notes that the complaint fails to plead facts from which it could be reasonably inferred that Outfront is a state actor and subject to liability for constitutional violations under § 1983. "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Relevant factors include (1) whether "the organization is mostly comprised of state institutions; (2) state officials dominate decision making of the organization; (3) the organization's funds are largely generated by the state institutions; and (4) the organization is acting in lieu of a traditional state actor." *Id.* As the Court has already explained, Plaintiffs' allegations of coordination between the City and Outfront are fatally conclusory. Failure to allege state action is an independent basis for dismissing Plaintiffs' constitutional claims against Outfront.

[5] Because all claims have been disposed, it is unnecessary to address the parties' arguments relating to these state-law claims.

| | : | |
|---|---|---|
| | Initials of Preparer | TJ |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-07036-SVW-AGRx | Date | 11/9/2020 |
|---|---|---|---|
| Title | *Anton Karraa et al. v. City of Los Angeles et al.* | | |

**IV.  Conclusion**

For the foregoing reasons, the Court GRANTS Defendant Outfront's motion to dismiss, GRANTS the City's motion for judgment on the pleadings, and DENIES Plaintiffs' motion for preliminary injunction.  Plaintiffs will have 21 days to file an amended complaint.

IT IS SO ORDERED.

: 

Initials of Preparer    TJ